Prichard *v.* Martin.

No counsel for appellee.

---

THEOPHILUS P. PRICHARD *v.* RICHARD MARTIN.

It is well settled, that where an employee is prevented by his employer, without reasonable ground, from performing his contract, he may sue upon the special contract, and recover damages to the amount of the actual loss sustained.

An action may be brought immediately upon the breach of the contract by the employer, and the employee may recover not only for damages actually sustained previous to the commencement of the suit, but for such as may occur in consequence of and after the breach, and within the contemplation of the contract.

Where an employer wantonly and without cause turns off his overseer, at a season of the year when it is impracticable to get employment elsewhere, and

26 *

Prichard *v.* Martin.

his time is wholly lost, the overseer is entitled to the stipulated wages for the whole time.

If an overseer abandon his employer wantonly and without sufficient cause, to the injury of his employer, he will be entitled to recover from the overseer any damages he might sustain by reason of his abandonment of the contract.

In error from the circuit court of Yazoo county; Hon. Robert C. Perry, judge.

Theophilus Prichard employed Richard Martin as an overseer for one year, agreeing to pay him $400, to furnish his family with such provisions as were made on the place, and with thirty pounds of coffee and fifty pounds of sugar. Before the end of the year, Prichard discharged Martin, offering to pay him for the time he had been in his employment, which Martin refused to receive, claiming compensation for the whole year. Prichard assigned as a reason for discharging Martin, that he abused his negroes, and treated him disrespectfully. This Martin denied. There is no proof that Martin abused the negroes; but there is proof that Prichard had permitted some cotton to lie on the ground until it was injuring by exposure; that Prichard directed a negro man who was present " to roll the bales immediately on skids;" Martin came up and saw what the negro was about, ordered him to stop and go and finish a swingletree which he (Martin) had directed to be made, and to tell Prichard he would have it rolled on skids by the ploughers at 12 o'clock.

Two verdicts were found for Martin, the first for $400, the second for $435. To the first verdict, Martin took a bill of exceptions; and from the second, Prichard prayed a writ of error to this court.

*Yerger* and *Rucks*, for appellant,

Contended the decision of the court below, in regard to the last verdict, was erroneous.

*D. Jones* and *George B. Wilkinson* for appellee.

" If an employee is prevented by his employer from performing his contract, and wantonly and capriciously turned off,

without sufficient cause, before the expiration of the term, he is entitled to recover wages for the whole term." *Josey* v. *Garth,* 7 Mis. R. 94.

" In South Carolina, if a planter turn off an overseer, without just cause, at a period of the year when it is impracticable to get business, and his whole time is lost, he shall recover his entire wages for the year." Chitty, Con. (Jenkins Ed.), 580, in note.

" New trial will not be granted, unless it is very clear that justice has not been done in the court below." *Leflore* v. *Justice,* 1 S. & M. 381.  " Nor when it appears that the jury found according to the weight of evidence." *Jenkins* v. *Whitehead,* Ib. 157.  " Or where there is little reason to suppose that a different result would ensue on another trial." *Barrenger* v. *Nesbit,* Ib. 22.  All cited and reaffirmed in *Bohr* v. *Steamboat Baton Rouge,* 7 Ib. 723.

" When instructions are refused which should have been given, and the jury have notwithstanding given a correct verdict, which could not or should not have been changed had the instructions been given, the verdict will not be set aside for such refusal." *Pritchard* v .*Myers,* 11 S. & M. 169; *Wilkinson* v. *Griswold,* 12 Ib. 669.

Mr. Justice HANDY delivered the opinion of the court.

This was an action brought by the defendant in error, an overseer, against the plaintiff in error, his employer, to recover the sum of $400, and the value of certain provisions and family supplies which the defendant had agreed to give the plaintiff for his services as overseer on his plantation for the year 1851, which contract the plaintiff alleges he entered upon the performance of, and would have performed, but he was unjustifiably, and without reasonable cause, discharged and turned off by the defendant in February, 1851.

The defence was, that the plaintiff abused the defendant's property and neglected his business, and that the plaintiff quit his employment because the defendant complained of his conduct, and when he quit, that the defendant tendered to him full payment for the services he had performed.

Prichard *v.* Martin.

The pleadings are informal and irregular, being under the act of 1850 abolishing the forms of pleadings.

On the trial, the plaintiff proved the contract as alleged, and also proved, by the neighboring planters, that the plaintiff was industrious, and attentive to the defendant's business. A near neighbor proves that he was generally with the negroes, and that he never saw him maltreat or even strike one of them; that the plantation was always in good order and condition under his management; that the horses and mules while he was there were in as good condition as they usually were; that he commenced living with defendant about the 1st of November, 1850, and was turned off on the 8th of February, 1851; that on one occasion the defendant, finding that some cotton bales were in a condition liable to injury, ordered one of the negroes to remove them, and that Martin came up soon afterwards and ordered him to desist immediately and go and finish a small piece of work which Martin had ordered him to do, and to tell the defendant that he would have the cotton removed when the ploughmen returned, which would be in about two hours; that this negro could not have removed the cotton without assistance, being old and decrepid; that when the defendant turned Martin off, the witness went over to reconcile the difference, and upon his intercession, defendant requested him to tell Martin that if he would abuse his negroes less and treat his teams better and show him more respect, he might remain, and when told of this Martin replied that he had never abused the property, but had done his duty, and would not worship the defendant; that in the latter part of January, 1851, the defendant stated to several witnesses, who were neighboring planters, that Martin was a good overseer, and that he was much pleased with him; that he had been informed, before employing him, that he was a cruel man, but that he had been misrepresented, and was not as cruel as the defendant himself; that the defendant had been in the habit of frequently turning off his overseers. It was further proved that when defendant turned the plaintiff off, he tendered him the sum of $46 as the amount due for the services rendered, which the plaintiff refused, claiming the full amount of his year's wages; that after he left, he used great

exertions to get an overseer's situation, that being the business he followed, but could not obtain one, as they were all filled at that season of the year, and he was compelled to work as a common laborer until near the close of the year. The plaintiff also proved the value of the provisions and supplies agreed to be furnished by the defendant to the plaintiff.

It was proved by one witness, on the part of the defendant, that he thought the plaintiff severe on negroes, and that in the fall of 1850, while the witness was working on the defendant's plantation, he saw the plaintiff strike a negro with a stick.

This is the substance of all the testimony, which is stated here with more fulness, as the decision may affect an important business relation of the country.

The court gave the following instruction at the instance of the plaintiff. If the jury believe from the evidence that Prichard discharged the plaintiff without sufficient cause, they will find for the plaintiff, and the measure of damages will be the injury sustained by the plaintiff.

And the following at the instance of the defendant : —

1. If the jury believe from the evidence that Martin's conduct, in attending to the business of the defendant, was calculated to injure defendant's property and lessen its value and did impair it, the defendant had the right to put an end to the contract by turning him off, and in that event the plaintiff could only recover for the time he served defendant at the rate agreed between them.

2. If the jury believe from the evidence that the plaintiff left the service of the defendant without sufficient cause, he can only recover for the time he served the defendant at the rate agreed between them.

And refused the following instructions asked by defendant: —

1. That for good cause Prichard had a right to consider the contract at an end ; and if Prichard afterwards told him to remain, plaintiff is only entitled to pay for the services he performed.

2. If the jury believe from the evidence that Martin left Prichard's business on the 8th of February, 1851, then Martin

is only entitled to recover for the time he was in such actual service for Prichard.

3. If the jury believe from the evidence that Martin is only entitled to recover for the time he was in the actual service of Prichard, and that the amount due Martin was tendered him by Prichard, then the law is for the defendant.

4. If the jury believe from the evidence that there was a special contract between plaintiff and defendant, that plaintiff was to oversee for the defendant during the year 1851, then the law is for the defendant.

The jury found a verdict for the plaintiff for $435, and the defendant moved for a new trial, 1. because the court erred in the instructions granted and refused; 2. because the verdict was contrary to the law and evidence; which motion was overruled, and hence the case is brought here.

The ground of this action is, that the defendant violated his contract with the plaintiff, and unjustifiably and without reasonable cause discharged him from his employment, and thereby caused a loss to him of his year's wages. It is well settled that where the employee is prevented by the employer, without reasonable ground, from performing his contract, he may sue upon the special contract and recover damages to the amount of the actual loss sustained, which will consist of the value of the service rendered, and the damage sustained by the refusal to allow performance of the rest of the contract; 21 Wend. 457; 24 Ib. 304; 1 Gilm. 562; 21 Verm. 84; 1 Denio, 317; Ib. 602; Ib. 606; and that the action may be brought immediately upon the breach of the contract by the employer, and that the plaintiff may recover not only for damages actually sustained previous to the commencement of the action, but for such as may occur in consequence of, and after the breach, and within the contemplation of the contract. 4 Peters, 182; 9 Ala. R. 292; *Rogers* v. *Parham*, 8 Georgia, R. 190. In accordance with this principle, it has been held that when the employer wantonly and without cause turns off his overseer, at a season of the year when it is impracticable to get employment elsewhere, and his time is wholly lost, the overseer is entitled to the stipulated

wages for the whole time. *Byrd* v. *Boyd,* 4 McCord, 246. It is also clear that if· the overseer abandon his employment wantonly and without sufficient cause, to the injury of the employer, the employer would be entitled to recover from him any damage he might sustain by reason of his abandonment of the contract.

Recognizing, as we do, the soundness of these rules, we will proceed to examine the objections urged by the plaintiff in error to the proceedings in the court below.

The first objection raised is to the instruction granted at the instance of the plaintiff, and it is insisted that the instruction should have been that the plaintiff was entitled to recover only such damages as with reasonable exertions he could not have prevented. It is certainly true that this question was proper to be considered by the jury ; but the proposition was substantially embraced in the instruction as given, which stated that the measure of damages should be the injury sustained by the plaintiff. What injury he had sustained was matter of evidence ; and upon that inquiry it was competent for the defendant, under this instruction, to show his neglect ·to seek for employment, and that by proper diligence he might have obtained employment whereby the damage to him would have been lessened. But no such evidence was offered. On the contrary, it was proved on the part of the plaintiff, that he used great exertions to obtain employment in the business to which he was accustomed, and failed because there were no situations to be filled, and that he was compelled to work as a common laborer until near the close of the year. The question was thus submitted to the jury by the general terms of the instruction, and it was met by the evidence offered by the plaintiff. If the defendant could have proved to the contrary, he was at liberty to do so, but failed to avail himself of it; and we can perceive no error in the instruction either in law or to his prejudice in fact.

Again, it is insisted that the conduct of the overseer in countermanding his employer's orders in relation to the removal of the cotton, was a sufficient cause to justify his discharge.

Generally such conduct on the part of an overseer is imprudent and reprehensible. If intended to set at defiance the

Prichard *v.* Martin.

authority of the proprietor, or done in such a manner as to produce insubordination among the slaves, it would be altogether inexcusable. But the circumstances attending this act tended to show that no such intention was entertained, and that no such effect was likely to be produced; and the witness Johnson, who was a planter and near neighbor, and competent to take a proper view of the transaction, does not seem to regard this as a sufficient reason for discharging the overseer. Indeed, it does not fully appear that the defendant discharged him on account of this act. At all events the matter was fully submitted to the jury, who were competent to judge of the propriety of the conduct of both parties; and, acting upon the testimony of planters, who are not to be presumed as disposed to justify a course of defiance and insubordination on the part of overseers, they have found that the plaintiff was discharged by the defendant unjustifiably and without reasonable cause. Upon this point, they were the proper judges, and their verdict is conclusive.

The only other objection urged is to the refusal of the court to grant the defendant's instruction, that if the defendant, after discharging the plaintiff, told him to remain, the plaintiff was only entitled to pay for the services he performed.

This instruction, so far as it was pertinent to the case, was the same in substance as the second instruction already granted at the instance of the defendant.

But it is manifest that the instruction, considered with reference to the testimony in the case, was calculated to mislead the jury. It is proved that after the defendant had ordered the plaintiff to leave his place, and threatened to drive him off, the defendant, upon Johnson's intercession, requested him to tell the plaintiff that he might remain if he would treat his negroes and teams better, and show him more respect; and upon being told this, that the plaintiff denied that he had ever abused the property, and said he had done his duty and would not worship the defendant. No violation of duty, on his part, is shown except it be the countermanding the defendant's order on one occasion above spoken of, which appears to have been considered excusable. His treatment of the property, and his

good management as an overseer, are clearly shown by the testimony. Under these circumstances, the condition upon which he was to be permitted to remain, can only be understood to mean that he was to do more than his duty required, and this condition he might well reject as an unreasonable exaction. It was something not embraced in his engagement, and to which he had a perfect right not to submit. Then, though the jury might have taken this view of the subject, as they might well have done from the testimony, yet under the general terms of this instruction, they would have been compelled to find for the defendant merely because he " told the plaintiff to remain," without taking into consideration the unreasonable condition upon which he was to be permitted to remain, and holding that he was not bound to submit to it. We think this was a sufficient ground for refusing the instruction.

Upon the whole, we think the case was fully and fairly submitted, both as to the law and the evidence to the jury, and we see no just ground for disturbing the verdict.

The judgment is, therefore, affirmed.