SOUTHWICK, J.,
for the Court.
¶ 1. Wesley Medical Center was granted summary judgment by the Lamar County Circuit Court in an action brought by Dr. David Miranda for breach of his employment contract. Miranda argues that there were disputed issues of material fact. We disagree and affirm the judgment.
FACTS
¶ 2. Dr. Miranda signed an employment contract to work as an emergency room doctor with Wesley on July 1, 2001. A second contract began on July 1, 2002. Each contract was for a one-year term. The 2002 contract contained these two termination provisions:
3.2 Termination Without Cause. Either party may terminate Physician’s employment hereunder, without cause, at any time upon sixty (60) days prior written notice to the other party.
3.3 Termination by Employer. Employer may terminate Physician’s employment hereunder at any time for “cause.” In the event Physician is terminated for cause, termination shall be effective immediately upon notification by Employer. Employer shall have the sole discretion in determining if cause exists. Cause includes, but is not limited to, the following:....
Fourteen examples of cause are then listed, which we will review in a later section of our analysis.
¶ 3. In summary, one section of the contract allowed termination by either party simply upon giving sixty-days written notice. That right was not used. Another section allowed termination at any time for cause. Wesley had sole discretion in determining if cause existed. On February 17, 2003, Wesley’s CEO called Dr. Miranda into her office and told him that he was being fired due to numerous patient complaints. Dr. Miranda was provided with seven written complaints concerning his conduct on specific occasions as the basis for his employment termination. Generally, the complaints involved what patients described as “rude and obnoxious” behavior and a demeanor that was said to indi *65 cate insensitivity and disinterest toward patients.
¶ 4. Dr. Miranda brought this suit alleging a wrongful termination. The circuit court granted summary judgment to Wesley. Dr. Miranda has appealed.
DISCUSSION
¶ 5. Summary judgments are reviewed de novo. The appellate court examines the same materials as did the trial court in order to determine whether a dispute of material fact exists and whether the moving party is entitled to judgment as a matter of law. M.R.C.P. 56; Monsanto Co. v. Hall, 912 So.2d 134, 136 (Miss.2005). Dr. Miranda argues that because his contract was for a one-year term, it was error to find as a matter of law that he was an at-will employee. A secondary argument is that a fact issue existed as to whether Wesley used good faith in exercising whatever rights it had to terminate Dr. Miranda. Finally, Dr. Miranda argues that public policy prevents his termination. We will discuss these issues separately.

ISSUE 1: At-Will Employment Contracts

¶ 6. The trial court held that even though the contract provided a one-year term of employment, Dr. Miranda was an at-will employee since he could be terminated “for cause” without having a right to contest the grounds. Several issues must be reviewed to determine whether to affirm.
¶ 7. In Mississippi, “an employment contract at will may be terminated by either party with or without justification.” HeartSouth, PLLC v. Boyd, 865 So.2d 1095, 1108 (Miss.2003) (quoting Kelly v. Miss. Valley Gas Co., 397 So.2d 874, 877 (Miss.1981)). Preliminarily, we note that it is almost beside the point whether to label Dr. Miranda’s contract “at-will.” The core issue is whether the contract provision allowing nonreviewable termination is enforceable. Absent illegality or public policy violations, contracts are to be enforced as written. Enforce is what the trial court did.
¶ 8. We will review the caselaw on at-will contracts. In many of the precedents, a phrase appears that employment is not at-will if there is a fixed-term contract. It will be helpful to examine the development of this frequently intoned but rarely applied part of the legal standard. In a recent decision, employment was found to be at-will, but this Court said that this would not be true under “a contract providing for a term of employment.” Senseney v. Miss. Power Co., 914 So.2d 1225, 1228 (Miss.Ct.App.2005) (citing Perry v. Sears, Roebuck & Co., 508 So.2d 1086, 1088 (Miss.1987)). The case we cited, Perry, was explaining general principles:
It is undisputed that there was no written employment contract specifying the length of Perry’s employment. Thus, on the face of it, Perry would seem to fall victim to Mississippi’s adherence to the common law rule that where there is no employment contract (or where there is a contract which does not specify the term of the worker’s employment), the relation may be terminated at will by either party. Mississippi has followed this rule since 1858.
Perry, 508 So.2d at 1088 (citing Butler v. Smith & Tharpe, 35 Miss. (6 Geo.) 457, 464 (1858)).
¶ 9. To gain understanding of the importance of a fixed term in a worker’s contract, we examine the precedent on which Perry relied, written in 1858 by Justice Alexander Hamilton Handy:
In its nature, it was an agreement constituting the plaintiff the agent of the defendants, to receive and store goods brought to the port for them by steam *66 boats, without limitation of time; and for that service, they agreed to pay him at certain stipulated rates.
The plaintiffs wharf-boat had been previously established, and was engaged in the business of receiving and storing goods, so that he was not induced to build the boat, or to enter upon the business, by the consideration of the agreement with the defendants. Thus far it was merely the employment of an agent for an indefinite time, to perform certain services from time to time, at a stipulated price, and either party would have had the right to put an end to the agency.
[[Image here]]
There appears, therefore, to be nothing in the transaction to take it out of the general rule, that an agency to do particular services from time to time, to be paid for as the services are rendered, and without any agreement as to the time of its continuance, is determinable at the pleasure of either party.
Butler v. Smith & Tharpe, 35 Miss. at 464.
¶ 10. Butler involved a contract without a definite term. However, Justice Handy had earlier upheld damages to an employee who was hired for one year but was fired after three months. Prichard, v. Martin, 27 Miss. 305, 307 (1854) (cited in appellee’s brief in Butler, 35 Miss, at 460-61). If termination occurs “wantonly and without cause” at a time of year “when it is impracticable to get employment elsewhere,” the entire unpaid wage for the year is due. Prichard, 27 Miss, at 310-11 (citing precedents only from other states). In neither Butler nor Prichard was there, as here, a contract with both a fixed term and a provision allowing termination at the employer’s sole discretion. Thus neither opinion sheds much interpretative light on the issues before us.
¶ 11. Other cases state that “Mississippi follows the common law rule that a contract of employment for an indefinite term may be terminated at the will of either party.” Kelly, 397 So.2d at 874 (ease concerned whether public policy should block a discharge made for filing workers’ compensation claim); Starks v. City of Fayette, 911 So.2d 1030, 1032 (Miss.Ct.App.2005) (at-will employee, citing Perry)-, Hammons v. Fleetwood Homes of Miss., Inc., 907 So.2d 357, 360 (Miss.Ct.App.2004) (“contracts drafted with indefinite terms regarding duration may be terminated at the will of either party”; the court found the contract to be at-will). In none of these cases was there a contract for a fixed term, which means there was no analysis of variations in such contracts.
¶ 12. In the most analogous set of facts to our own, the Mississippi Supreme Court upheld a summary judgment which found employment at-will under three written contracts for management of the offices of three insurance companies in a county. Shaw v. Burchfield, 481 So.2d 247 (Miss. 1985). One contract provided for termination of manager Shaw on the date that he became seventy years of age, and the other two contracts at age sixty-five. Id. at 250. Shaw argued these created a definite term preventing his earlier dismissal without sufficient cause. The court examined the contracts and found several relevant clauses, including termination without reason on ten days’ notice, or for a serious act of dishonesty, or for disability. Id. at 252-53. Shaw was fifty-six when he was discharged because of ill health after being given ten days’ notice. Id. at 249 & 251. The court noted that the contracts might have been clearer if all the grounds for termination had been listed together with an “or” between them. Nonetheless, their independence and effectiveness were clear. Id. at 253. Similar to Dr. Miranda’s con *67 tract, whatever fixed term there may have been in Shaw’s contracts was subject to explicit discharge rights.
¶ 13. A few precedents involve dismissal under employment contracts with fixed terms. In the most recent we have discovered, a one-year term might be inferred from a letter from the employer that offered an annual salary, required the new employee to give up his existing job and move, and provided for payment of moving expenses. Rosen v. Gulf Shores, Inc., 610 So.2d 366 (Miss.1992). The letter — the only significant writing regarding the employment — did not set out any rules for termination. After three months, the employee was terminated based on allegedly poor performance. Id. at 367. Based on this letter, the Supreme Court found a fact issue of whether a one-year term was offered; summary judgment was reversed. Id. at 369-70.
¶ 14. Another precedent involved an oral contract to employ the plaintiff “for the term of one year beginning June 1, 1949, and ending May 31, 1950, with the understanding that if said manufacturing plant was efficiently managed and continued in operation that he would then be employed from year to year thereafter so long as his services were satisfactory.” Greer v. Crawford Corp., 220 Miss. 97, 103, 70 So.2d 69, 70 (1954). The issues in the case involved the statute of frauds and whether this oral contract was enforceable at all. The significance of Greer for us is that the contract provided “definitely for employment for one year.... ” Id., 220 Miss. at 105, 70 So.2d at 71. That definiteness was due to the absence of a right of discharge during the first year.
¶ 15. An older case in which the right to terminate during a definite term was the central question also concerned an oral contract. Lee v. Hampton, 79 Miss. 321, 30 So. 721 (1901). Hampton had been employed by Lee as a manager of a plantation for eight years under year-to-year oral contracts. On January 2, 1900, Hampton asked if he would be the manager for 1900. Lee replied, “You can stay if you wish.” Id., 79 Miss. at 325, 30 So. at 721. On January 13, Hampton was discharged. - The court found a legitimate jury issue of whether the brief conversation formed a one-year contract of employment that could not be terminated without proof of adequate cause. Id.
¶ 16. In these occasional precedents in which an employment contract for a definite term arguably existed, only in Shaw was there also a right to terminate at the sole discretion of the employer. A “definite term” self-evidently must be definite. A contract for a stated term removes employment from the at-will doctrine only if there is an enforceable right for the employee to remain for that length of time. The period of time must be definite legally; it must be a promise and not just a goal. If what the contract gives in one provision for a set term is taken back in another for discharge at the sole discretion of the employer, there is a legally indefinite term of employment. Almost the reverse of the principle that an employee may be dismissed at-will “absent an employment contract expressly providing to the contrary” (Burchfield, 481 So.2d at 253-54), an employee with a fixed term contract may be dismissed at-will only if his contract expressly so provides.
¶ 17. Here, Section 3.3 of the contract is the key provision, as it was the one under which Dr. Miranda was dismissed. It provides for termination for cause, reserving sole discretion to Wesley for assessing whether there is sufficient cause. The one-year term provided a maximum period for employment. Continuation for a longer period would require forbearance or a new contract. Since there was no *68 limit on the reasons for which Wesley could end Dr. Miranda’s employment at any time, this was an at-will relationship. Dr. Miranda’s contract was for one year with incontestable exceptions. With an unfettered right to terminate, the contract’s length was irrelevant.

ISSUE 2: Good Faith Provision for Termination

¶ 18. Regardless of the at-will rules, Dr. Miranda argues that a fact issue exists as to whether Wesley exercised its rights in good faith. He relies on caselaw that indicates every contract in Mississippi imposes on the parties the obligation of good faith and fair dealing. See University of Southern Mississippi v. Williams, 891 So.2d 160, 170-71 (Miss.2004) (“every contract contains an implied covenant of good faith and fair dealing in performance and enforcement.”)
¶ 19. However, the Supreme Court has corrected its sometimes overly-broad statements that all contracts have implied covenants of good faith and fair dealing. While “[t]here are numerous Mississippi contract cases that state that all contracts contain an implied duty of good faith and fair dealing, [the Supreme Court] has never recognized a cause of action based on such a duty arising from an employment at-will relationship.” Young v. North Miss. Med. Ctr., 788 So.2d 661, 663-64 (Miss.2001) (emphasis removed). “[A]t-will employment relationships are not governed by a covenant of good faith and fair dealing which gives rise to a cause of action for wrongful termination.” Id.; see also Cothern v. Vickers, Inc., 759 So.2d 1241, 1248 (Miss.2000) (“there is no implied duty of good faith and fair dealing in employment contracts.”) Thus, the validity of terminations under at-will contracts are not to be viewed through a good faith lens. Otherwise, the language that an employer may validly fire for a good, bad, or no reason becomes a nullity. Harris v. Mississippi Valley State University, 873 So.2d 970, 986 (Miss.2004).
¶20. Alternatively, significance might be found in the fact that this contract actually refers to “good faith.” We again quote the general provision used for Dr. Miranda’s termination:
3.3 Termination by Employer. Employer may terminate Physician’s employment hereunder at any time for “cause.” In the event Physician is terminated for cause, termination shall be effective immediately upon notification by Employer. Employer shall have the sole discretion in determining if cause exists. Cause includes, but is not limited to, the following:....
The contract then lists fourteen specific examples of cause for termination, including this:
3.3.12 Upon the determination of Employer in good faith that Physician is not providing adequate patient care or that the health, safety, or welfare of patients is jeopardized by continuing the employment of Physician.
¶ 21. Even if employment at-will contracts do not have an implied good faith requirement, subparagraph 3.3.12 is an explicit reference to good faith. However, that subparagraph is not the one that explains Dr. Miranda’s dismissal. The Human Resource Director who recommended termination stated that the provisions relied upon were Sections 3.3.1-3.
3.3.1 Upon material violation by Physician of any provisions of this Agreement or the rules, policies, and/or procedures of Employer and/or Hospital.
3.3.2 Upon repeated failure by Physician to meet utilization perform- *69 anee efficiency, or quality standards established by Employer.
3.3.3 Upon conduct by Physician which is considered by Employer to be unethical, unprofessional, fraudulent, unlawful, or adverse to the interest, reputation or business of Hospital or Employer.
¶ 22. Dr. Miranda’s actions, such as his alleged boorishness and rudeness, reasonably qualify as unprofessional conduct. Regardless of which specific subparagraph is the most apt, the reasons are contractually described in Section 3.3 as examples and not limitations. Every basis for dismissal is to be determined at the employer’s “sole discretion,” making that discretion control even when the specific reason contains “good faith” terminology. We conclude that section 3.3.12 is not sufficient to import the concept of good faith throughout the contract and overrule at-will principles.

ISSUE 3: Public Policy Exception to Atr-Will Employment Contracts

¶ 23. Dr. Miranda argues that his termination was against public policy because the true reason for his dismissal was his refusal to give narcotics to drug seekers or to over-prescribe antibiotics. He alleges that Wesley was more concerned with maximizing profits than with medical care.
¶ 24. In addition to unlawful discriminatory bases for discharge, there are two public policy prohibitions: at-will employment may not be terminated for reporting or for refusing to participate in illegal activity. HeartSouth, 865 So.2d at 1108, citing McArn v. Allied Bruce-Terminix Co., 626 So.2d 603, 607 (Miss.1993). The trial court found and the record reflects that Dr. Miranda never offered proof that he had been terminated on these grounds. To the extent recognition of another public policy exception is sought, we find no basis to pronounce one on these facts.
¶ 25. The trial court committed no error in granting summary judgment to Wesley.
¶ 26. THE JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. KING, C.J., AND MYERS, P.J., DISSENT WITHOUT SEPARATE WRITTEN OPINION. CHANDLER, J., NOT PARTICIPATING.